Jennifer Fraser Parrish (11207)
 parrish@mcpc.law
Yevgen Kovalov (16297)
 kovalov@mcpc.law
**MAGLEBY CATAXINOS, PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiff Dane Christensen and the Class

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DANE CHRISTENSEN,** *on behalf of himself and all others similarly situated*<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DESERT ROCK CAPITAL, INC.,**<br><br>**Defendant.** | **COMPLAINT – PROPOSED CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br><br>**Case No.: 2:24-cv-808**<br><br>**Honorable Jared C. Bennett** |

### **INTRODUCTION**

1. This action arises out of the marketing practices of Defendant, Desert Rock Capital, Inc. ("Defendant" or "Desert Rock") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Defendant sends telemarketing text messages and makes telemarketing calls advertising Defendant's services to individuals on the National Do-Not-Call Registry.

3. Defendant continues to send text messages and make calls even after it receives multiple requests from the called party requesting that Defendant stop.

4.      Accordingly, Mr. Christensen brings this action on behalf of himself and classes of similarly situated individuals.

<u>**JURISDICTION AND VENUE**</u>

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6.      This Court has jurisdiction over Defendant because Defendant is headquartered in this District, conducts business transactions in this District and has committed tortious acts in this District.

7.      Venue is proper in this District under 28 U.S.C.A. § 1391(b) because Defendant resides within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

<u>**PARTIES**</u>

8.      Plaintiff Dane Christensen ("Mr. Christensen" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Orem, Utah.

9.      Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10.      Defendant is, and at all times mentioned herein was, a Utah corporation headquartered at 1160 South State Street, Suite 240, Orem, Utah 84097.

11.      Defendant may be served via its registered agent, Shirelle Erb located at 2180 S 1300 E, Suite 360, Salt Lake City, UT, 84106.

12.      Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## TCPA BACKGROUND

13.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

14.    Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

15.    These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

16.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

17.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

18.    The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

19.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines

3

are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

20.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

21.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

22.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

23.     These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

24.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

25.     These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. §

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase

64.1200(d).

26.      Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

27.      There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

28.      These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

29.      Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

30.      Further, a person or entity can be liable for calls made on its behalf in violation of

---

or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

31. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

32. Finally, text messages, such as the ones sent by Defendant, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

33. Mr. Christensen is the user of a cellular telephone number ending in 1891.

34. Mr. Christensen's cellular telephone number ending in 1891 is used for residential purposes and is not associated with a business.

35. Mr. Christensen's telephone number ending in 1891 has been on the National Do-

Not-Call Registry since August 7, 2024.  Mr. Christensen put his number on the National Do-Not

Call Registry in an attempt to get Defendant to stop calling and texting him.

36.     Defendant sent Mr. Christensen multiple unsolicited text messages soliciting

Defendant's products and services.

37.     Defendant called Mr. Christensen multiple times soliciting Defendant's products

and services.

38.     For example and as shown below, on March 11, 2021, Defendant texted Mr.

Christensen regarding a "re-loan."  Mr. Christen responded and instructed Defendant not to text

him again.  Despite this, Defendant texted Mr. Christensen on December 3, 2021 regarding loans

around the holidays.



39.     On March 3, 2023, Defendant again texted Mr. Christensen offering its financial

products and services.



40.    Again, Mr. Christensen advised Defendant that he did not want these messages.

41.    On June 18, 2024, Defendant again texted Mr. Christensen soliciting its products and services.



42.     On August 30, 2024, Defendant again texted Mr. Christensen soliciting its products and services.



43.     Mr. Christensen responded "Stop."  Despite responding "Stop", as instructed by the text message, Defendant sent him an identical text message on October 8, 2024, as shown above.

44.     Mr. Christensen responses "Stop" to the October 8, 2024 message as well.

45.     On September 10, 2024, as shown below, Defendant sent Mr. Christensen another text message soliciting its products and services.



46.    Mr. Christensen responded "Stop."  Despite responding "Stop", as instructed by the text message, Defendant sent him an identical text message on October 21, 2024, as shown above.

47.    Defendant also placed numerous telemarketing calls to Plaintiff on at least the following dates and times:

        a.  June 18, 2024;

        b.  June 27, 2024;

        c.  July 19, 2024;

        d.  August 30, 2023 (twice);

        e.  August 30, 2023;

    f.   September 10, 2024 (leaving a voicemail);

    g.   October 8, 2024 (leaving a voicemail);

    h.   October 21, 2024 (leaving a voicemail).

48.    Mr. Christensen did not provide his consent to receive these calls or text messages.

49.    To the extent Defendant had any consent to send these text messages, Mr. Christensen repeatedly revoked such consent, as demonstrated above.

50.    Defendant's records or the records of third parties will reveal all of the text messages and calls Defendant sent and/or made to Mr. Christensen.

51.    Despite Mr. Christensen's requests, Defendant continued to call and text Mr. Christensen.

52.    On information and belief, Defendant or those otherwise making calls and/or sending text messages on Defendant's behalf, did not have written do-not-call policies or procedures at the time of the texts to Mr. Christensen and the classes defined below.  Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued text messages and calls to Mr. Christensen after he directly asked not to be contacted.

53.    Defendant's violations were negligent.

54.    Alternatively, Defendant's violations were willful and knowing.

55.    Mr. Christensen and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's calls and text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from

11

other activities to address the unwanted text messages.  The text messages were annoying and a nuisance, and wasted the time of Mr. Christensen and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

56.     Defendant makes calls and sends text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

57.     Defendant, made two or more telephone solicitations to Mr. Christensen, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

58.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Christensen is entitled to $500 per text through 47 U.S.C. § 227(c).

59.     Mr. Christensen is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

60.     Defendant sent two or more telemarketing calls and texts to Mr. Christensen despite not having in place the required policies and procedures prior to sending such messages and failing to honor Mr. Christensen's do not call/text requests.  This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

61.     Accordingly, for violations of 47 C.F.R. § 64.1200(d), Mr. Christensen is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

62.     Mr. Christensen is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

## <u>CLASS ACTION ALLEGATIONS</u>

63.    Mr. Christensen brings this action under Fed. R. Civ. P. 23 on behalf of two

"Classes," defined as follows:

### <u>THE TCPA CLASSES</u>

> Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

("Registry Class")

> Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or telemarketing text messages in a 12-month period, including at least one after the person requested that the calls or text messages stop from four (4) years prior to the filing of the Complaint to the date of class certification.

("Internal Do Not Call Class")

(The Registry Class and the Internal Do Not Call Class collectively referred to herein as

the "Classes.")

64.    Excluded from the Classes are Defendant and any entities in which Defendant has

a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to

whom this action is assigned and any member of their staffs and immediate families, and any

claims for personal injury, wrongful death, and/or emotional distress.

65.    The Members of the Classes for whose benefit this action is brought are so

numerous that joinder of all members is impracticable.

13

66.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a.      The time period(s) during which Defendant made its calls and sent its text messages;

b.      The telephone numbers to which Defendant called and/or sent its text messages;

c.      The telephone numbers for which Defendant had prior express written consent;

d.      The purposes of such text messages and calls; and

e.      The names and addresses of Class members.

67.     The Classes are comprised of hundreds, if not thousands, of individuals.

68.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

a.      Whether Defendant (or someone acting on its behalf) sends telemarketing text messages or makes telemarketing calls;

b.      Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c.      Whether Defendant calls or sends solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

d.      Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

e.      Whether Defendant's statutory violations were willful and knowing; and

f.      Whether Defendant should be enjoined from engaging in such conduct in the future.

14

69.     Plaintiff is a member of the Classes in that Defendant sent two or more texts or calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, after he asked Defendant to stop, and while his telephone number was on the National Do-Not-Call Registry.

70.     Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

71.     Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

72.     Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

73.     Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

74.     Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

75.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

76.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

77.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

78.     Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-77 as if fully set forth herein.

79.     Defendant sent, or had sent on its behalf, text messages and calls constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

80.     Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the texts or calls.

81.     Plaintiff and putative Registry Class Members each received two or more such text messages or calls in a 12-month period.

82.     Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

83.     Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Internal Do Not Call Class)**

84.     Plaintiff and the proposed Internal Do Not Call Class incorporate the allegations of paragraphs 1-77 as if fully set forth herein.

85.     Defendant sent numerous text messages and calls for telemarketing purposes to Plaintiff's and putative Internal Do Not Call Class Members' telephone numbers.

86.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

87.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

88.     Defendant did so despite not recording or honoring "do not call" requests.

89.     Defendant sent two or more telemarketing text messages or calls to Plaintiff and putative Internal Do Not Call Class Members' telephone numbers in a 12-month period.

90.     Plaintiff and putative Internal Do Not Call Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

91.     Plaintiff and putative Internal Do Not Call Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages; and

F.      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

DATED this 28th day of October 2024.

MAGLEBY CATAXINOS, PC


/s/ Yevgen Kovalov
Jennifer Fraser Parrish
Yevgen Kovalov


Max S. Morgan, Esquire (*pro hac vice forthcoming*)
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
Attorneys for Plaintiff Dane Christensen and the Class