Kennedy D. Nate (14266)
Austin C. Nate (17789)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, #1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
knate@rqn.com
anate@rqn.com

*Attorneys for Defendant Desert Rock Capital, Inc.*

# IN THE UNITED STATES DISTRICT COURT,
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DANE CHRISTENSEN, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DESERT ROCK CAPITAL, INC.,<br><br>Defendant. | **MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION**<br><br>Case No.: 2:24-cv-808-CMR<br><br>Honorable Cecilia M. Romero |

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and DUCivR 7-1, Defendant Desert Rock Capital, Inc. ("Desert Rock"), by and through its undersigned counsel, hereby respectfully files this Motion to Dismiss or Stay and Compel Arbitration ("Motion"). *See* Fed. R. Civ. P. 12(b)(1), (6); DUCivR 7-1(a).[1]

---

[1] Although the Tenth Circuit does not appear to have weighed in on whether a motion to compel arbitration falls under Rule 12(b)(1) or 12(b)(6), other circuits have explained that such a motion is proper under either Rule. *See, e.g.*, *Barnabo v. Edward D. Jones & Co., LP*, No. 2:23-CV-09, 2023 WL 2730218, at *1 (W.D. Mich. Feb. 28, 2023) ("The Sixth Circuit has held, in both published and unpublished opinions, that a motion to compel arbitration in this situation should be construed by the district court as a Rule 12(b)(6) motion for failure to state a claim."); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017) ("The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction."). Similarly, district courts in this jurisdiction have found that such motions are proper under Rule 12(b)(1). *See Spencer v. TICI LLC*, No. 22-CV-02464-RM-KLM, 2023 WL 2214530, at *2 (D. Colo. Feb. 24,

## SPECIFIC GROUNDS FOR RELIEF

Desert Rock requests that the Court enter an order compelling arbitration based on the parties' multiple agreements to arbitrate any disputes relating to ongoing marketing communications from Desert Rock. In June 2018, Plaintiff Dane Christensen ("Christensen") applied for and obtained a loan from Desert Rock. In executing the loan documents, Christensen voluntarily provided his personal contact information to Desert Rock. Christensen also specifically consented and agreed, in at least two separate sets of documents, that Desert Rock could contact him via text message and phone to advertise and offer its services. Christensen also agreed that any claims or disputes arising out of or relating in any way to the loan documents—which included his consent to be contacted in the future for marketing purposes—were subject to mandatory arbitration. Despite agreeing to such provisions, Christensen disregarded his contractual obligations and initiated this lawsuit without ever submitting his claims to arbitration. Because Christensen's claims are clearly encompassed by multiple mandatory arbitration provisions, Desert Rock respectfully requests that Christensen's claims be dismissed or stayed and submitted to mandatory arbitration.

## STATEMENT OF FACTS[2]

1. On June 18, 2018, Christensen executed a credit application ("Application") with Desert Rock wherein he requested a $2,000.00 loan. (*See* Declaration of Shaun Bawa ("Bawa Decl."), attached as Exhibit 1; Application, attached as Exhibit A to the Bawa Decl., at 1.)

2. Christensen specifically consented to Desert Rock contacting him via text and phone in several different parts of the Application for both current and future offers:

---

2023), report and recommendation adopted, No. 22-CV-02464-RM-KLM, 2023 WL 2806856 (D. Colo. Apr. 6, 2023).

[2] Desert Rock will refer to its Statement of Facts as "SOF".

> PLEASE READ BEFORE SIGNING. I CERTIFY TO THE TRUTHFULNESS OF THE ABOVE INFORMATION.
>
> I consent for Desert Rock Capital, Inc. to use my personal information to provide me with the services I have requested from Desert Rock Capital, Inc., including services that display customized content and advertising.
>
> I authorize Desert Rock Capital, Inc., to send me text (SMS) messages. I understand and agree that while Desert Rock Capital, Inc., will not charge me a service fee for the texting services, my mobile service carrier's message and data rates may apply to any short message service (SMS) messages I receive from Desert Rock Capital, Inc. I agree that I am responsible for any such charges. I will consult my mobile service carrier's pricing plan to determine the charges for sending and receiving SMS messages, if any. I agree that Desert Rock Capital, Inc., will not be liable for any delays in the receipt of any SMS text messages, as delivery is subject to effective transmission from my mobile service carrier. Desert Rock Capital, Inc.'s, texting services are provided on an AS IS basis.

(*See* Application at 2-3 (redlines added).)

3. Christensen also signed the Wireless Policy, Autodialer and Contact Authorization document, which expressly authorized Desert Rock to contact Christensen regarding "potential extensions of credit, marketing and advertisement, and any other business purpose":

> Desert Rock Capital, Inc., may contact you by telephone, cell or wireless phone, text (SMS) messages, electronic mail (e-mail), or postal mail. You have provided contact information to Desert Rock Capital, Inc., with the express intent of permitting Desert Rock Capital, Inc., to contact you about your account, loan, collection on your account, potential extensions of credit, marketing and advertisement, and any other business purpose, and you are expressly authorizing Desert Rock Capital, Inc., to use the contact information you have or will provide to Desert Rock Capital, Inc., to contact you using any, some or all of these methods.

(*Id.* at 4 (redlines added).)

4. Christensen also knew that his consent to being contacted for "potential extensions of credit, marketing and advertisement, and any other business purpose" was **not** a condition of purchase with Desert Rock, as demonstrated by his signature being placed directly under the Consent and Authorization provision:

> **Consent and Authorization:** I hereby consent to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of Desert Rock Capital, and consent and authorize Desert Rock Capital to contact me as herein disclosed and described at and using the telephone, cell, wireless and other numbers I have provided, in addition to any other contact information provided. I have received and understand the opt-out procedures, and agree to use the same if I chose at any time to opt-out of these communications with Desert Rock Capital, Inc. I understand that consent is not a condition of purchase.
>
> _____    06/18/16
> APPLICANT SIGNATURE        DATE

(*Id.* (redlines added).)

3

5. Christensen also agreed that "[a]ny and all controversies, claims, alleged breaches or disputes arising out of or *relating in any way* to this Application" must be resolved through arbitration:

> ARBITRATION: Any and all controversies, claims, alleged breaches or disputes arising out of or relating in any way to this Application, including whether any controversy, claim, alleged breach or dispute is subject to arbitration, and including, without limitation, any and all claims that would otherwise be subject to class actions, shall upon the request of any party hereto, be subject to binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association.

(*Id.* at 3 (emphasis added).)

6. On June 18, 2018, and in conjunction with the Application, Christensen entered into a Consumer Fixed Rate Note and Disclosure Statement (the "Note" and, collectively with the Application, the "Loan Documents"). (*See* Note, attached as Exhibit B to the Bawa Decl.)

7. Once again, Christensen specifically consented to Desert Rock contacting him via text and phone in several different areas of the Note and signed another Wireless Policy, Autodialer and Contact Authorization, in which Christensen specifically consented to Desert Rock contacting him regarding "potential extensions of credit, marketing and advertisement, and any other business purpose":

> e. Borrower consents and agrees that Lender may contact Borrower at any time by telephone, text, SMS messaging, email or any other means available, and any per-message fees should be borne by Borrower. Borrower may "opt-out" of receiving text or SMS messages by responding with "STOP" to any of the messages sent to Borrower by Lender.
>
> ***
>
> Desert Rock Capital, Inc., may contact you by telephone, cell or wireless phone, text (SMS) messages, electronic mail (e-mail), or postal mail. You have provided contact information to Desert Rock Capital, Inc., with the express intent of permitting Desert Rock Capital, Inc., to contact you about your account, loan, collection on your account, potential extensions of credit, marketing and advertisement, and any other business purpose, and you are expressly authorizing Desert Rock Capital, Inc., to use the contact information you have or will provide to Desert Rock Capital, Inc., to contact you using any, some or all of these methods.

(*Id.* at 5-6 (redlines added).)

8. Once again, Christensen acknowledged by signing the Consent and Authorization provision that his consent to being contacted for "potential extensions of credit, marketing and

4

advertisement, and any other business purpose" was **not** a condition of purchase with Desert Rock:

> **Consent and Authorization:** I hereby consent to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of Desert Rock Capital, and consent and authorize Desert Rock Capital to contact me as herein disclosed and described at and using the telephone, cell, wireless and other numbers I have provided, in addition to any other contact information provided. I have received and understand the opt-out procedures, and agree to use the same if I chose at any time to opt-out of these communications with Desert Rock Capital, Inc. I understand that consent is not a condition of purchase.
>
> By: _____  06/18/2018
>       Borrower                  Date
> By: _____

(*Id.* at 6 (redlines added).)

9. Similar to the Application, Christensen once again agreed and signed the Note, acknowledging that any claims "relating *in any way* to [the Note]" were subject to mandatory arbitration:

> **MANDATORY ARBITRATION:** Any and all controversies, claims, alleged breaches or disputes rising out of or relating in any way to this Agreement, including whether any controversy, claim, alleged breach or dispute is subject to arbitration, and including, without limitation, any and all claims that would otherwise be subject to class actions, shall upon the request of any party hereto, be subject to binding arbitration pursuant to the Commercial Arbitration Rules administered by the American Arbitration Association ("AAA"), under the AAA Consumer Rules in effect at the time the claim is filed ("AAA Rule"). Copies of the AAA Rules and forms can be located at www.adr.org, or by calling 1-800-778-7879. The arbitrator's decision shall be final, binding, and non-appealable. Judgment upon the award may be entered and enforced in any court having jurisdiction.
>
> By: _____  06/18/2018
>       Borrower                  Date
> By: _____

(*See id.* at 4 (emphasis added).)

10. Christensen also waived his right to bring any claims related to the Note as a class action lawsuit and expressly agreed that he "underst[ood] and cho[se] to have any claims decided, individually, through arbitration":

5

> **CLASS ACTION WAIVER:** Any claim must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding ("Class Action"). The parties expressly waive any ability to maintain any Class Action in any forum. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any person or entity not part to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THORUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE THEIR CASE AND TO BE PARTY OF A CLASS OR REPRESENTATIVE ACTION. HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY, THROUGH ARBITRATION. THIS AGREMENT NOT TO BRING OR PARTICIPATE IN CLASS ACTIONS IS AN INDEPENDENT AGREEMENT AND SHALL SURVIVE THE CLOSING AND REPAYMENT OF THE LOAN FOR WHICH BORROWER(S) IS APPLYING AND ANY SUBSEQUENT LOANS OR EXTENSIONS OF LOANS.
>
> By: _[signature]_     06/18/2018
>      Borrower              Date

(*See id.* (redlines added).)

      11.    Christensen also agreed that "[a]ny use of the credit offered shall constitute [his] acceptance of these terms":

> 3.    Any use of the credit offered shall constitute my acceptance of these terms.
>
>                                                                                  DC
>                                                                             Borrower & Co-Borrower Initials

(*See id.* at 2.)

      12.    Based on his execution of the Loan Documents, Desert Rock loaned Christensen $1,200.00 on June 18, 2018. (*See* Bawa Decl. ¶¶ 5-6.)

      13.    Prior to initiating this lawsuit, Christensen never attempted to arbitrate his claims. (*See id.* ¶ 7.)

6

14. The only reason Desert Rock contacted Christensen was because he had provided consent, at least twice, to receive contact about "potential extensions of credit, marketing and advertising, and any other business purpose." (*See id.* ¶ 8.)

15. If it was not for Christensen consenting to be contacted by voluntarily providing his information, applying for a loan, and signing the Loan Documents, Desert Rock would have never contacted him. (*See id.* ¶ 9.)

16. In the Complaint, Christensen alleges that Desert Rock violated the Telephone Consumer Protection Act ("TCPA") by sending text messages and calling him at his number ending in 1891—the very number (a) that Christensen provided to Desert Rock in the Application and the Note; and (b) through which Christensen consented to be contacted by Desert Rock. (*Compare* Compl. ¶¶ 33-34 *with* Application at 1 and Note at 1.)

17. Christensen alleges that Desert Rock contacted him for advertising and marketing purposes, which is precisely one of the reasons for which he consented to be contacted by Desert Rock. (*Compare* Compl. ¶¶ 38-41, 47 *with* Application at 4 and Note at 6.)

## ARGUMENT

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (internal quotation marks omitted); *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1272 (D.N.M. 2010) ("There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.")

> When analyzing a motion to compel arbitration, courts consider the following:
>
> the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith.

*BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). "If a court is satisfied that there is no genuine dispute of material fact, and that the making of the arbitration agreement is not in issue, the FAA instructs courts to direct the parties to proceed to arbitration in accordance with the terms of the agreement." *Singh v. DISH Network LLC*, No. 2:18-CV-00856-DAK, 2019 WL 3037882, at *2 (D. Utah July 11, 2019) (quotation marks omitted). Moreover, when a "contract has a broad, sweeping arbitration clause, it is *presumed* that disputes will be arbitrated." *Hicks v. Cadle Co.*, 355 F. App'x 186, 192 (10th Cir. 2009) (emphasis added). And, importantly, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved *in favor of arbitration*." *BOSC*, 853 F.3d at 1170 (emphasis added); *Hicks*, 355 F. App'x at 192 ("[Courts] resolve any doubts in favor of arbitrability.").

## I. THE LOAN DOCUMENTS INCLUDE BINDING AND ENFORCEABLE ARBITRATION PROVISIONS.

In this case, Christensen cannot genuinely dispute that the Loan Documents include a binding and enforceable obligation to arbitrate. First, the Loan Documents are binding and enforceable agreements. (SOF ¶¶ 1-12.) Second, the Loan Documents contain multiple, broad arbitration provisions that mandate that any claims even related to the Loan Documents "in any way" must be arbitrated. (SOF ¶¶ 5, 9-11.) Third, Christensen never attempted to comply with the mandatory arbitration provisions contained in the Loan Documents; instead, he improperly and impermissibly proceeded with filing his complaint in this Court. (SOF ¶¶ 13, 16-17.) Thus,

the Court should grant the Motion and compel Christensen to arbitrate his claims because he cannot genuinely dispute the enforceability of the Loan Documents or their broadly drafted and mandatory arbitration provisions.

II. **THE MANDATORY ARBITRATION PROVISIONS CLEARLY ENCOMPASS CHRISTENSEN'S CLAIMS.**

As noted above, when a contract includes a broad and sweeping arbitration provision, there is a presumption that all disputes must be arbitrated. *Hicks*, 355 F. App'x at 192. Notably, "an arbitration agreement that applie[s] to claims 'arising out of or relating to' an agreement [is] the broadest language . . . parties could reasonably use to subject their disputes to [arbitration], including collateral disputes that relate to the agreement containing the clause." *Willow Creek Assocs. of Grantsville LLC v. Hy Barr Inc.*, 2021 UT App 116, ¶ 47, 501 P.3d 1179 (internal quotation marks omitted) (collecting cases).

In this case, Desert Rock is entitled to a presumption of arbitrability given the broad and sweeping language included in the Loan Documents. Specifically, the Application provides that "[a]ny and all controversies, claims, alleged breaches or disputes arising out of or relating *in any way* to this Application . . . is subject to arbitration." (SOF ¶ 5 (emphasis added).) The Note includes virtually identical language: "Any and all controversies, claims, alleged breaches or disputes rising out of or relating *in any way* to this Agreement . . . is subject to arbitration." (SOF ¶ 9 (emphasis added).) Lastly, the Class Action Waiver in the Note further makes clear—in bold and all caps—that Christensen "underst[ood] and cho[se] to have any claims decided individually, through arbitration." (SOF ¶ 10.) Thus, based on the multiple "broad, sweeping arbitration clause[s]" in the Loan Documents, the Court should compel arbitration because Desert Rock is entitled to a presumption of arbitration relating to Christensen's claims. *See Hicks*, 355 F. App'x at 192.

9

Moreover, even setting aside the presumption, the facts in this case make clear that Christensen agreed to arbitrate the exact claims alleged in his Complaint. First, there can be no dispute that Christensen specifically provided Desert Rock with his contact information in the Loan Documents and consented to being contacted by Desert Rock on an ongoing basis regarding "potential extensions of credit, marketing and advertising, and any other business purpose."[3] (*See* SOF ¶¶ 3, 7, 14-15.) Indeed, Christensen gave his consent even *after* being notified in both the Application and the Note that consent for future communications was **not** a condition of purchase with Desert Rock.[4] (*See* SOF ¶¶ 3-4, 7-8.)

Second, there is no dispute that the various text messages and calls Christensen identifies in his Complaint were sent *because* Christensen executed the Loan Documents and consented to receiving future offers and ongoing marketing and advertising from Desert Rock. (*See* SOF ¶¶ 16-17.) Once again, these communications were sent to the exact number Christensen provided and communicated the exact offers permitted under the Loan Documents. (*See id.*) In other words, Christensen's own allegations, and the images of the text messages included in his Complaint, establish that each communication between Desert Rock and Christensen was for marketing purposes or to offer a future loan, the exact communications Christensen consented to receive under the Loan documents. (*See id.*)

Finally, the binding arbitration provisions in the Loan Documents irrefutable encompass Christensen's claims because the communications at issue in the Complaint arise from and

---

[3] To be clear, this is not a situation where the Wireless Policy, Autodialer and Contact Authorization was limited to only communications about the loan. (SOF ¶¶ 3-4, 7-8.) To the contrary, the policies appended to both the Application and the Note made clear that Christensen was providing consent for ongoing contact regarding "potential extensions of credit, [and] marketing and advertisement." (*See id.* ¶¶ 3, 7.)

[4] Even if Christensen argues that he did not read the Loan Documents, such argument fails because "under Utah law, each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *Mackley v. Openshaw*, 2019 UT 74, ¶ 38, 456 P.3d 742.

directly relate to the communications Christensen consented to receive in the Loan Documents. (*See id.* ¶¶ 1-17.) Stated differently, arbitration of Christensen's claims is mandatory because each of Desert Rock's communication at issue in this case was for the "potential extensions of credit, marketing and advertising, and any other business purpose." (*See* SOF ¶¶ 3, 7.) Accordingly, the Court should grant the Motion and compel arbitration because Christensen's claims are subject to the mandatory arbitration provisions and can only be pursued through arbitration.

## CONCLUSION

Based on the foregoing, Desert Rock respectfully requests that this Motion be granted and Christensen compelled to purse his claims through arbitration.

DATED this 21st day of November 2024.

              RAY QUINNEY & NEBEKER P.C.

              */s/ Kennedy D. Nate*
              Kennedy D. Nate
              Austin C. Nate

              *Attorneys for Defendant Desert Rock Capital, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify on this 21st day of November 2024, a true and correct copy of the foregoing **MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION** was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Jennifer F. Parrish
Yevgen Kovalov
MAGLEBY CATAXINOS PC
141 W Pierpont Ave
Salt Lake City, UT 84101
parrish@mspc.law
kovalov@mspc.law

Max S Morgan
THE WEITZ FIRM LLC
1515 Market St #1100
Philadelphia, PA 19102
Max.morgan@theweitzfirm.com

*Attorneys for Plaintiff*

                                                    */s/ Megan Kuchenthal*

1688791